# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

**GARY CIPPARONE,**

        Plaintiff,

v.

**CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY,**

        Defendant.

Civ. No. 3:15-cv-00587-PA

**OPINION & ORDER**

PANNER, Senior District Judge.

Plaintiff Gary Cipparone ("Plaintiff"), seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying disability benefits under Title II and supplemental security income under Title XVI. For the reasons set forth below, the decision of the Commissioner is AFFIRMED.

## BACKGROUND

Born in 1961, Plaintiff was 48 years old on his alleged disability onset date of April 1, 2010. Tr. 9, 21. Plaintiff has more than a high school education and is able to communicate in English. Tr. 21. Plaintiff filed for disability insurance benefits ("DIB") under Title II and Supplemental Social Security Income ("SSI") under Title XVI on September 1, 2011. Tr. 9. Plaintiff's claims were denied initially and upon review. *Id.* At Plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on August 28, 2013. *Id.* On September 19, 2013, the ALJ issued a written opinion finding Plaintiff not disabled. Tr. 23. On February 9,

2015, the Appeals Council denied review, making the ALJ's decision the final agency decision. Tr. 1.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess

and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled.    20    C.F.R.    §§ 404.1520(a)(4)(v);    416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis.  At step one, the ALJ found that Plaintiff had not performed substantial gainful activity since the original alleged onset date of April 1, 2010. Tr. 11.  At step two, the ALJ found that Plaintiff had the following severe impairments:

status/post tendon surgery on the right wrist, status/post right orchiectomy, history of left rotator cuff tear, asthma, and anxiety and depressive disorders. *Id.* At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal a listed impairment. Tr. 13.

In assessing Plaintiff's RFC, the ALJ found that Plaintiff had the residual functional capacity to perform light work with the following limitations: frequent, but not constant handling, grasping, and feeling; no overhead reaching; simple routine work; occasional supervisor contact; superficial coworker contact, with no teamwork or collaboration; and no public contact. Tr. 14.

At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant work. Tr. 21. At step five, the ALJ found that Plaintiff had the RFC to perform work as an office helper and a photo copier. Tr. 22. Accordingly, the ALJ found Plaintiff not disabled. Tr. 23.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r,* 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's

interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff argues the ALJ erred by: 1) improperly discounting the opinion of Plaintiff's treating physician, Dr. Warda; 2) improperly discounting Plaintiff's subjective symptom testimony; 3) failing to properly assess lay opinion evidence; and 4) erring at Step Five of the disability analysis.

### I.    Dr. Warda

In general, the opinion of a treating physician is given more weight than the opinion of an examining physician, and the opinion of an examining physician is given more weight than the opinion of a non-examining physician. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn*, 495 F.3d at 632; 20 C.F.R. §

404.1527(c). To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

If a treating or examining physician's opinion is contradicted by another physician's opinion, it may be rejected by specific and legitimate reasons. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Id.* at 1149.

Dr. Robert Warda, M.D., has been Plaintiff's primary care physician since 2002. Tr. 478. Dr. Warda submitted a Physical Residual Functional Capacity Assessment in February 2012, in which he opined that Plaintiff was limited to occasionally lifting 20 points and frequently lifting less than 10 pounds; that he could stand or walk for less than 2 hours in an 8 hour workday; that he could sit for less than 6 hours in an 8 hour workday; that he must periodically alternate sitting and standing; and that he was limited in his ability to push and pull with his upper and lower extremities. Tr. 471. Dr. Warda explained that these physical limitations were due to "severe hand and thumb pain, bilaterally," as well as "severe low back, sacral pain." Tr. 472. For postural limitations, Dr. Warda determined that Plaintiff could occasionally balance, stoop, kneel, crawl, climb ramps or stairs, but never climb ladders, ropes, or scaffolds. *Id.* Dr. Warda opined that Plaintiff had limited manipulation due to "numbness, tingling, and pain in his fingers." *Id.* Dr. Warda also identified an number of environmental limits connected to Plaintiff's hands and allergies. Tr. 474. Dr. Warda believed that Plaintiff's physical limitations would result in six or more absences per month. Tr. 475.

Dr. Warda also completed a Mental Residual Functional Capacity report in February 2012. Tr. 476. Dr. Warda opined that Plaintiff was moderately limited in his ability to

understand and remember detailed instructions and his ability to complete a normal work day without unreasonable rest periods. *Id.* Dr. Warda assessed Plaintiff as having moderate restrictions in activities of daily living; maintaining concentration, persistence, and pace; and extended periods of decompensation. Tr. 478. As with Plaintiff's physical limitations, Dr. Warda believed that Plaintiff's mental limitations would result in six or more absences per month. *Id.* Dr. Warda confirmed his assessment on July 18, 2013. Tr. 481.

The ALJ gave "some weight" to Dr. Warda's opinion, noting that it was "not supported by the doctor's own findings and his opinions contrast sharply with the other evidence of record." Tr. 18.

"Incongruity" between a treating physician's questionnaire responses and his medical records is a specific and legitimate reason for rejecting that doctor's opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). "Internal inconsistencies" within a doctor's reports, or between the reports of different doctors, constitutes relevant evidence. *Morgan v. Comm'r*, 169 F.3d 595, 603 (9th Cir. 1999). "Determining whether inconsistencies are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount the opinions of [a doctor] falls within this responsibility." *Id.* Plaintiff disputes that Dr. Warda's opinion was inconsistent with his own treatment notes. The Commissioner points to a number of incongruities between Dr. Warda's opinion and his own medical records.

First, Dr. Warda opined that Plantiff would be able to stand and walk for less than 2 hours in an 8 hour workday due to "severe low back, scaral pain." Tr. 471-72. Imaging of Plaintiff's back revealed only "mild to moderate arthritis." Tr. 462. As the Commissioner correctly noted, Dr. Warda's treatment notes do not contain any objective findings with regard to Plaintiff's lower back and certainly nothing to support his final opinion of "severe" lower back

pain. Dr. Warda's opinion is also contradicted by that of examining physician Dr. John Ellison, M.D., who performed a "comprehensive musculoskeletal" examination of Plaintiff in January 2012. Tr. 422. Dr. Ellison's examination revealed no muscle spasms or tenderness, with a "good range of motion" and flexion, extension, and rotation "within normal limits." Tr. 423. Dr. Ellison assessed Plaintiff with "mild low back pain." Tr. 424.

Next, Dr. Warda assessed Plaintiff as having "severe testicular pain" which was a "chronic and somewhat disabling condition." Tr. 430. Plaintiff told Dr. Warda that the injections he received helped "a little bit," but that cold weather made the pain "much worse and almost unbearable." *Id.* The record shows that Plaintiff did experience testicular pain, but that he underwent an orchiectomy to correct it. Tr. 415, 404. The reports of Plaintiff's urologist, Dr. David Menashe, M.D., reflect that the orchiectomy procedure was "of tremendous benefit in relieving [Plaintiff's] pain," and that he had "actually been off all narcotics for many months, but recently restarted them" due to issues with his hand. Tr. 397. At another exam, Plaintiff reported to Dr. Menashe that he was "essentially pain free." Tr. 403.

Dr. Warda also assessed "severe hand and thumb pain, bilaterally." Tr. 472. Dr. Warda opined that Plaintiff was limited in reaching, handling, fingering, and feeling due to numbness, tingling, and pain in his fingers, but did not provide any information about the degree of limitation. Tr. 472. Plaintiff underwent surgery for his wrist condition and followed it up with physical therapy through March 2011. Tr. 372; 350-70. At the conclusion of his physical therapy, Plaintiff had restored 80% of functional use in his right hand and used a brace for extra support 15-20% of the time. Tr. 369. Plaintiff rated his pain as a 2 out of 10, Tr. 369, and did not require pain medication. Tr. 371. Dr. Ellison examined Plaintiff in January 2012 and found that Plaintiff's elbows, wrists, and fingers were all normal bilaterally, as was Plaintiff's muscle

strength, bulk, and tone, including grip. Tr. 424. Plaintiff was negative for Babinski and Tinel signs, as well as Phalen's maneuver, bilaterally. *Id.*

Turning to Dr. Warda's assessment of Plaintiff's mental limitations, Dr. Warda opined that Plaintiff was permanently disabled by "profound anxiety," Tr. 431, and that Plaintiff would have more than six absences in a month. Tr. 478. Despite this, Dr. Warda assessed only moderate limitations in activities of daily living, concentration, persistence and pace, and episodes of decompensation. *Id.* In January 2012, Plaintiff was examined by Dr. Daniel Scharf, Ph.D.. Tr. 418-20. During that examination, Plaintiff "did not report significant occupational or educational impairment from his anxiety," Tr. 419, and was "somewhat ambivalent" about what prevents him from working, citing first a lack of jobs and then difficulties with his hands. Tr. 418. Non-examining physician Dr. Joshua Boyd, Psy.D., assessed only mild limitations in Plaintiff's social functioning and concentration, persistence, and pace, and no restrictions in his activities of daily living or episodes of decompensation. Tr. 86.

I conclude that the ALJ properly supported his determination that Dr. Warda's opinion was inconsistent with his treatment notes and the other medical evidence. Although Plaintiff offers an alternative interpretation of the record, "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch*, 400 F.3d at 679.

Plaintiff also challenges the ALJ's decision to disregard Dr. Warda's opinion that Plaintiff was permanently disabled. "A treating physician's evaluation of a patient's ability to work may be useful or suggestive of useful information, but a treating physician does not consult a vocational expert or have the expertise of one." *MacLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2010). "The law reserves the disability determination to the Commissioner." *Id.*

Accordingly, I conclude that the ALJ properly declined to credit Dr. Warda's opinion on the ultimate question of disability.

Finally, Plaintiff also challenges the ALJ's speculation that Dr. Warda's desire to assist Plaintiff may have colored Dr. Warda's medical opinion. The Commissioner affirms that it does not rely on this reasoning and asserts that the ALJ did not either. As I have found that the ALJ provided other adequate grounds for rejecting Dr. Warda's opinion, I decline to address this issue.

## II.    Plaintiff's Credibility

When gauging a claimant's credibility, an ALJ must engage in a two-step process. 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Second, if such evidence exists, barring affirmative evidence of malingering,[1] the ALJ must give clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Id.* at 1284; *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). A general assertion that the Plaintiff is not credible is insufficient. The ALJ must identify what testimony is not credible and what evidence undermines the claimant's allegations. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Not every reason provided for discrediting a claimant's testimony must be upheld, so long as the remaining reasons are valid. *Carmickle v. Comm'r*, 533 F.3d 1155, 1162-63 n.4 (9th Cir. 2008).

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but found Plaintiff "not entirely

---

[1] The ALJ found no evidence of malingering in this case.

credible" concerning the intensity, persistence, and limiting effects of those symptoms. Tr. 17.

Plaintiff disputes this determination.

The ALJ found that Plaintiff's activities of daily living were inconsistent with his complaints of disabling symptoms and limitations. Tr. 19.

> [T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct . . . [including] whether the claimant engages in daily activities inconsistent with the alleged symptoms. While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferrable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

*Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (internal quotation marks and citations omitted).

In this case, the ALJ observed that Plaintiff's activities of daily living were "strong," and included doing household chores, managing his finances, dressing and caring for his own hygiene, driving, shopping, and caring for his infirm parents. Tr. 19; 43; 420. I conclude that the ALJ properly determined that these activities were inconsistent with Plaintiff's alleged limitations.

The ALJ also found that Plaintiff stopped working for reasons unrelated to his disability. Tr. 20. A claimant's reason for leaving employment is a valid consideration in weighing credibility. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). In this case, Plaintiff told Dr. Scharf that he was laid off in 2009 "due to the economy." Tr. 419. Plaintiff also told Dr. Scharf that "lack of jobs" was his main barrier to returning to work. Tr. 418. I conclude that the record supports the ALJ's credibility finding on this point.

Similarly, the ALJ found that Plaintiff's statements were inconsistent with the record. Tr. 19. "In assessing the claimant's credibility, the ALJ may use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony." *Tonapetyan*, 242 F.3d at 1148 (internal quotation marks and citation omitted).    At the hearing in this case, Plaintiff testified that he could not find employment through a vocational rehabilitation service because his surgeon had not pronounced him stable. Tr. 47-49. The record indicates, however, that Plaintiff's file with the Office of Vocational Rehabilitation Services was closed because Plaintiff was "not able to focus on [his] vocational process." Tr. 294. I conclude that the ALJ has adequately supported his decision to discredit Plaintiff's testimony based on inconsistent statements.

The ALJ also noted that Plaintiff's testimony about the degree of his limitations was not supported by the medical evidence. Tr. 19. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch*, 400 F.3d at 681. As the ALJ observed, Plaintiff alleged a "very high degree of limitation because of his impairments." Tr. 19. As discussed both in this section, and in my earlier review of Dr. Warda's findings, the medical record does not fully support Plaintiff's claimed limitations. *See, e.g.,* Tr. 424 (Dr. Ellison's findings on Plaintiff's manipulative limitations); 403 (Dr. Menasche's findings on Plaintiff's testicular pain); 419 (Dr. Scharf's report on Plaintiff's anxiety).    Standing alone, this factor would not justify an adverse credibility finding, but I conclude that the ALJ properly considered it in conjunction with the other bases for rejecting Plaintiff's testimony.

As I have identified four separate bases for affirming the ALJ's credibility finding, it is not necessary to address the other bases identified by the ALJ in his opinion. *Carmickle* 533 F.3d at 1162-63 n.4.

## III. Lay Opinion Evidence

Lay testimony regarding a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence the ALJ must take into account. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). The ALJ may reject lay testimony if he provides "arguably germane reasons" supported by substantial evidence, even if those reasons are not clearly linked to the ALJ's determination. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

In this case, a Third Party Function Report was filled out by Plaintiff's twin brother and housemate, Glenn Cipparone on November 21, 2011. Tr. 14. Glenn Cipparone's Third Party Function Report included a number of observations of Plaintiff's limitations. Tr. 239-46. Although the ALJ refers to Glenn Cipparone's Report in his opinion, he does not specifically address the limitations identified by Glenn Cipparone. Tr. 14. Plaintiff contends that this was an error. The Commissioner responds that any error was harmless because Plaintiff's testimony was similar to Glenn Cipparone's Report and the ALJ's reasons for rejecting Plaintiff's testimony apply equally to the lay opinion evidence.

An ALJ's error is harmless where it is "inconsequential to the ultimate non-disability determination." *Molina*, 674 F.3d at 1115. "In other words, in each case we look at the record as a whole to determine whether the error alters the outcome of the case." *Id.* When an ALJ has validly rejected all the limitations described by a lay witness, the ALJ's failure to give specific witness-by-witness reasons for rejecting lay testimony is harmless. *Id.* at 1122.

In this case, the ALJ rejected Plaintiff's testimony in part because it was inconsistent with the medical record and this rationale applies with equal force to Glenn Cipparone's Report. As the Commissioner points out, Glenn Cipparone reported that Plaintiff's testosterone injections can cause aggression and "explosive bouts," Tr. 245, but Plaintiff himself reported that his moods improved with testosterone. Tr. 236. Dr. Menashe also reported that Plaintiff had "no adverse reaction to the testosterone." Tr. 399. Similarly, Glenn Cipparone's report that Plaintiff can maintain attention for 10-30 minutes and that he follows spoken instructions "very badly," Tr. 244, is countered by Plaintiff's own report that he can maintain attention for 2-3 hours and that he follows spoken instructions "very well." Tr. 235. Dr. Scharf also reported that Plaintiff was "able to understand and remember instructions and sustain concentration and attention" during his examination. Tr. 420.

Based on the record, I conclude that the ALJ's failure to expressly address Glenn Cipparone's lay witness testimony was inconsequential to his ultimate determination of non-disability. Any error was therefore harmless.

## IV.    Step Five

Plaintiff asserts that the ALJ committed three errors at Step Five of the sequential analysis. I address each in turn below.

### A. Conflict Between the VE Testimony and the DOT

First, Plaintiff asserts that the ALJ failed to inquire of the Vocational Expert ("VE") whether her testimony was consistent with the Dictionary of Occupational Titles ("DOT") and, as a result, failed to reconcile a conflict between the VE's testimony and the DOT. An ALJ's failure to inquire about a conflict between the VE's testimony and the DOT is harmless if there is no conflict. *Massachi v. Astrue*, 486 F.3d 1149, 1154 n.19 (9th Cir. 2007). Plaintiff, as the party

claiming error, bears the burden of showing that error carried with it a "substantial likelihood of prejudice." *Ludwig v. Astrue*, 681 F.3d 1047, 1053-54 (9th Cir. 2012). The Commissioner concedes that the ALJ failed to inquire about conflicts between the VE's testimony and the DOT, but asserts that any error was harmless because there is no conflict.

Plaintiff asserts that there is an obvious conflict between the VE hypothetical and the DOT descriptions of the identified positions. In particular, Plaintiff points to the limitations in handling, overhead reaching, occasional supervisor contact, superficial coworker contact, and no public contact. The ALJ posed a hypothetical question to the VE in which a worker was limited to "frequent but not constant handling, no overhead reaching, limited to simple routine work, occasional contact with supervisors, and superficial coworker contact, and no public contact." Tr. 73. The first position identified by the VE was Office Helper, DOT 239.567-010, *available at* 1991 WL 672232, and the second was Photocopying-Machine Operator, DOT 207.685-014, *available at* 1991 WL 671745. Tr. 74. Both positions require only frequent handling, which is consistent with the VE hypothetical. Tr. 73. Both positions require frequent reaching, but are silent as to whether that reaching would be overhead. The DOT descriptions are likewise silent about the level of social interaction involved.

"An ALJ may take administrative notice of any reliable job information, including information provided by a VE." *Bayliss*, 427 F.3d at 1218. "A VE's recognized expertise provides the necessary foundation for his or her testimony," and "no additional foundation is required." *Id.* When the DOT is silent on a particular aspect of the described job, the ALJ may properly rely on the VE's testimony. *Edmiston v. Comm'r*, No. 6:14-cv-01320-MA, 2015 WL 4042153, at *6 (D. Or. July 1, 2015); *see also Sterba v. Colvin*, No. 3:13-cv-00859-TC, 2014 WL 7228989, at *2 (D. Or. Dec. 16, 2014) ("There is no contradiction between the DOT

description and the VE's testimony because the VE provided a level of detail absent from the DOT in answering the ALJ's hypothetical."). I conclude, therefore, that the ALJ properly relied on the VE's testimony and that there is no direct conflict between the VE's testimony and the DOT.

Next, Plaintiff asserts that the ALJ erred by failing to include all of Plaintiff's limitations in his hypothetical to the ALJ. As the Commissioner points out, however, this argument amounts to a reiteration of Plaintiff's earlier objection to the ALJ's conclusion about Dr. Warda's findings. As I have previously determined that the ALJ gave adequate reasons for discounting Dr. Warda's opinion, I similarly find that the ALJ did not err in failing to incorporate those limitations into the VE hypothetical.[2] *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

Finally, Plaintiff asserts that the ALJ erred by failing to include limitations in persistence identified by Dr. Scharf into his hypothetical to the VE. Dr. Scharf opined that Plaintiff "likely would have some difficulties with persistence." Tr. 420. Dr. Scharf's opinion does not, however, translate into a specific functional limitation. In similar circumstances, the Ninth Circuit has held that it is not error for an ALJ to exclude a limitation in concentration when a physician fails to explain the "extent or significance" of a claimant's "decreased concentration skills," even when the ALJ has otherwise accepted that physician's findings. *Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999). The doctor's "mere statement that [the claimant] experienced *some* diminution in her concentration skills falls short of an informed opinion that [the claimant]'s pain and diminished concentration skills would significantly interfere with her

---

[2] Plaintiff specifically points to the environmental limitations identified by Dr. Warda, but neither of the jobs identified by the VE involve exposure to environmental hazards. DOT 239.567-010, *available at* 1991 WL 672232; DOT 207.685-014, *available at* 1991 WL 671745.

ability to work." *Id.* at 1114. In this case, as in *Meanel*, the ALJ's findings at Step Five are adequately supported by the record.

## CONCLUSION

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED.

It is so ORDERD and DATED this _____/_____ day of June, 2016.

_____
OWEN M. PANNER
United States Senior District Judge